**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

TAMMY BAYLIS,

                              Plaintiff,

         - v -                                          Civ. No. 8:13-CV-0977
                                                                         (RFT)

CAROLYN W. COLVIN, *Commissioner of Social Security*,

                              Defendant.

**APPEARANCES:**                                  **OF COUNSEL:**

OFFICE OF MARK A. SCHNEIDER            MARK A. SCHNEIDER, ESQ.
Attorney for Plaintiff
57 Court Street
Plattsburgh, New York 12901

SOCIAL SECURITY ADMINISTRATION      LAUREN E. MYERS, ESQ.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza – Room 3904
New York, New York 10278

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## MEMORANDUM-DECISION and ORDER[1]

In this action, Plaintiff Tammy Baylis moves, pursuant to 42 U.S.C. § 405(g), for review of a decision by the Commissioner of Social Security denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI").[2] Based upon the following discussion, the Commissioner's decision denying Social Security benefits is **reversed** and this case is **remanded**

---

[1] On March 27, 2015, the parties consented, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, to have this Court exercise full jurisdiction over this matter. Dkt. No. 15.

[2] This case has proceeded in accordance with General Order 18, which sets forth the procedures to be followed when appealing a denial of Social Security benefits. Both parties have filed Briefs, though oral argument was not heard. Dkt. Nos. 13 & 14.

back to the Social Security Administration ("SSA") for further development of the record.

## I. BACKGROUND

The Court adopts the facts set forth in Plaintiff's Brief under the heading "FACTS," with the exception of any legal arguments contained therein. Dkt. No. 13, Pl.'s Br., at pp. 2–12; *but see* Dkt. No. 14, Def.'s Br., at p. 2 (adopting statement of facts set forth by the Administrative Law Judge ("ALJ") in his written opinion).

Baylis, born on May 12, 1965, filed an application for DIB and SSI on September 13, 2010, claiming an inability to work as of February 1, 2006, due to a variety of ailments, including swelling of her left knee, problems with her left foot, and rotator cuff issues. Dkt. No. 7, Admin. Transcript [hereinafter "Tr."] at pp. 139-44, 145-48, & 168-69. She also suffers from diabetes mellitus and is morbidly obese.[3] She received her GED in 1982 and did not attend any special education courses while in school. *Id*. at pp. 169-70. Her past work included waitress, chef, customer service, childcare/babysitter, and nursing assistant. *Id*. at p. 176.

Baylis's disability applications were denied on initial review. *Id*. at pp. 79–86. On November 9, 2011, a Hearing was held before Administrative Law Judge ("ALJ") Terrence Farrell wherein testimony was procured from Baylis, who was not accompanied by counsel or any other representative, and from a vocational expert ("VE"). *Id*. at pp. 25-70. On February 24, 2012, ALJ Farrell issued an unfavorable decision finding that Baylis was not disabled. *Id*. at pp. 6-24. On August 1, 2013, the Appeals Council refused to consider certain evidence submitted to it, finding that the evidence did not pertain to the time period at issue, and concluded that there was no basis under the Social Security

---

[3] At the time of submitting her disability application, Plaintiff represented that she was 5'5" and weighed 300 pounds. Tr. at p. 169. Her body mass index ("BMI") would be calculated at 49.9, which is categorized as morbidly obese. *See* United States Department of Health and Human Services, National Institute of Health BMI calculator, *available at* https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm (last visited September 22, 2015).

Regulations to grant Plaintiff's request for review, thus rendering the ALJ's decision the final determination of the Commissioner. *Id*. at pp. 1–5. Exhausting all of her options for review through the Social Security Administration's tribunals, Plaintiff now brings this appeal.

## II. DISCUSSION

### A. Standard of Review

Under 42 U.S.C. § 405(g), the proper standard of review for this Court is not to employ a *de novo* review, but rather to discern whether substantial evidence supports the Commissioner's findings and that the correct legal standards have been applied. *See Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *Urtz v. Callahan*, 965 F. Supp. 324, 325–26 (N.D.N.Y. 1997) (citing, *inter alia*, *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). Succinctly defined, substantial evidence is "more than a mere scintilla" of evidence scattered throughout the administrative record; rather, it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938); *see also Williams ex. rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). "To determine on appeal whether an [Administrative Law Judge's] findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex. rel. Williams v. Bowen*, 859 F.2d at 258.

The Administrative Law Judge ("ALJ") must set forth the crucial factors supporting the decision with sufficient specificity. *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). Where the ALJ's findings are supported by substantial evidence, the court may not interject its interpretation of the administrative record. *Williams ex rel. Williams v. Bowen*, 859 F.2d at 258; 42 U.S.C. § 405(g). However, where the weight of the evidence does not meet the requirement for substantial evidence or

a reasonable basis for doubt exists as to whether correct legal principles were applied, the ALJ's decision may not be affirmed. *Johnson v. Bowen*, 817 F.2d at 986.

### B. Determination of Disability

To be considered disabled within the meaning of the Social Security Act, a plaintiff must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore, the claimant's physical or mental impairments must be of such severity as to prevent engagement in any kind of substantial gainful work which exists in the national economy. *Id*. at § 423(d)(2)(A).

In determining whether a claimant is disabled, the Commissioner follows a five-step analysis set forth in the Social Security Administration Regulations. 20 C.F.R. §§ 404.1520 & 416.920. At Step One, the Commissioner "considers whether the claimant is currently engaged in gainful activity." *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982). If the claimant is engaged in substantial gainful activity, he or she is not disabled and the inquiry ends. 20 C.F.R. §§ 404.1520(b) & 416.920(b). If the claimant is not engaged in substantial gainful activity, the Commissioner proceeds to Step Two and assesses whether the claimant suffers from a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. *Id.* at §§ 404.1520(c) & 416.920(c). If the claimant suffers from a severe impairment, the Commissioner considers at Step Three whether such impairment(s) meets or equals an impairment listed in Appendix 1, in Part 404, Subpart P of the Regulations. *Id*. at §§ 404.1520(d) & 416.920(d). The Commissioner makes this assessment without considering vocational factors such as age, education, and work experience. *Berry v. Schweiker*, 675

F.2d at 467. Where the claimant has such an impairment the inquiry ceases as he or she is presumed to be disabled and unable to perform substantial gainful activity. *Id*. If the claimant's impairment(s) does not meet or equal the listed impairments, the Commissioner proceeds to Step Four and considers whether the claimant has the residual functional capacity ("RFC")[4] to perform his or her past relevant work despite the existence of severe impairments. 20 C.F.R. §§ 404.1520(e) & 416.920(e). If the claimant cannot perform his or her past work, then at Step Five, the Commissioner considers whether the claimant can perform any other work available in the national economy. *Berry v. Schweiker*, 675 F.2d at 467; 20 C.F.R. §§ 404.1520(f) & 416.920(f).

Initially, the burden of proof lies with the claimant to show that his or her impairment(s) prevents a return to previous employment (Steps One through Four). *Berry v. Schweiker*, 675 F.2d at 467. If the claimant meets that burden, the burden then shifts to the Commissioner at Step Five to establish, with specific reference to medical evidence, that the claimant's physical and/or mental impairment(s) are not of such severity as to prevent him or her from performing work that is available within the national economy. *Id.*; 42 U.S.C. § 423(d)(2)(A); *see also White v. Sec'y of Health and Human Servs.*, 910 F.2d 64, 65 (2d Cir. 1990). In making this showing at Step Five, the claimant's RFC must be considered along with other vocational factors such as age, education, past work experience, and transferability of skills. 20 C.F.R. §§ 404.1520(f) & 416.920(f); *see also New York v. Sullivan*, 906 F.2d 910, 913 (2d Cir. 1990).

---

[4] "Residual functional capacity" is defined by the Regulations as follows: "Your impairment(s), and any related symptoms, such as pain, may cause physical and mental limitations that affect what you can do in a work setting. Your residual functional capacity is what you can still do despite your limitations." 20 C.F.R. §§ 404.1545(a) & 416.945(a).

### C. ALJ Farrell's Findings

As noted above, Baylis and a VE were the only witnesses to testify at the Hearing. Tr. at pp. 25-70. In addition to such testimony, the ALJ had Baylis's medical records consisting of treatment reports and opinions from various treating and/or consulting physicians. *Id.* at pp. 303-497.

ALJ Farrell noted initially that, for DIB purposes, Baylis met the insured status requirements of the Social Security Act through December 3, 2009.[5] Tr. at p. 11. Using the five-step disability evaluation, ALJ Farrell found that: (1) Baylis had not engaged in any substantial gainful activity since February 1, 2006, the alleged onset disability date;[6] (2) she has severe medically determinable impairments, namely diabetes, obesity, problems with left knee, status post left ankle fracture, hypertension, history of left shoulder surgery, history of kidney stones, reading and math disorders, borderline intellectual functioning, and history of marijuana abuse, but, her depressive disorder is deemed to be not severe; (3) her severe impairments do not meet nor medically equal any impairment listed in Appendix 1, Subpart P of Social Security Regulation No. 4; (4) she retains the RFC to perform sedentary work with certain limitations, such as she would be limited to simple, unskilled work, and, as such, she could not return to any of her prior work; but, (5) considering her age, education, work experience, RFC, the VE testimony, and using the Medical-Vocational Guidelines as a framework,

---

[5] In order for an individual to qualify for DIB, her disability must have commenced at a time when she met the insured status requirements as provided by the Social Security Act. 42 U.S.C. §§ 423(a)(1)(A) & (c)(1); 20 C.F.R. §§ 404.130 & 404.315(a). Here, Plaintiff met the insured status requirements through December 31, 2009. Tr. at p. 11. Thus, DIB could only be paid if Plaintiff showed that prior to this date, she was unable to perform any substantial gainful work due to a medically determinable impairment.

For an individual to be eligible for SSI, she must meet the income and resource requirements of the Social Security Act. 42 U.S.C. §§ 1382a & 1382b. Furthermore, SSI benefits are not payable for any month before the month in which the application for such benefits is filed. 20 C.F.R. § 416.335. Assuming she meets the income requirement, Plaintiff would be eligible for SSI if prior to the date of the ALJ's decision she was deemed unable to perform substantial gainful work as a result of a medically determinable impairment.

[6] The ALJ acknowledged that Baylis had been working during the period at issue, however, the amount she earned did not rise to the level of substantial gainful activity. Tr. at pp. 11-12.

Baylis could perform work available in the national economy and was therefore not disabled. *Id.* at pp. 11-19.

### D. Plaintiff's Contentions

Generally, Plaintiff contends that she is disabled by virtue of the combination of her impairments and that the Commissioner rendered several errors necessitating a remand for either calculation of benefits or consideration of further evidence. *See generally* Pl.'s Br. More specifically, Baylis claims that the Appeals Council erred when it refused to consider new evidence submitted to it on appeal and that the ALJ erred when he (1) did not provide Plaintiff with a full and fair hearing; violated the Treating Physician Rule, (2) erroneously assessed Plaintiff's credibility, and (3) gave an inaccurate hypothetical question to the VE. *Id*. In response, Defendant contends that the Appeals Council appropriately considered new evidence and that the Commissioner's decision denying benefits is supported by substantial evidence in the record. Dkt. No. 14, Def.'s Br.

### E. Analysis of ALJ Decision

While Plaintiff has identified an array of errors committed by the ALJ, the Court chooses to focus primarily on two of the more glaring errors: 1) the flawed RFC assessment; and 2) the erroneous hypothetical submitted to the VE and the ALJ's apparent reliance on the VE's opinion.

#### *1. RFC*

As noted above, the Commissioner assesses a claimant's RFC as a basis for determining the particular types of work the claimant may be able to do despite the existence of physical and/or mental impairments. *See* 20 C.F.R. §§ 404.1545(a) & 416.945; 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(c). In qualifying work in the national economy, the Regulations classify and define jobs according to their physical exertion requirements as sedentary, light, medium, heavy, and very heavy.

20 C.F.R. §§ 404.1567 & 416.967. In determining RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the plaintiff's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe. *Id*. at §§ 404.1545(a) & 416.945(a).

In this action, when assessing Plaintiff's RFC, the ALJ reviewed the medical record and opinion evidence and determined that Baylis had the

> residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) except limited to simple, unskilled work, occasionally lift, carry, push, and pull 10 pounds; frequently lift, carry, push, and pull less than 10 pounds; stand/walk at least two hours in a work day with normal breaks; and occasionally reach with the nondominant upper extremity.

*Id*. at p. 16.

The ALJ concluded that Baylis does not have "significant functional limitations due to her left shoulder, left knee, back, and left foot pain" though he apparently considered, to some extent, the effects of her diabetes. *Id*. The ALJ also considered the symptoms alleged by Plaintiff that could "reasonably be accepted as consistent with the objective medical evidence and other evidence; however, he found Plaintiff's statements and testimony regarding her disabling limitations to be "largely unsupported by the medical records, including histories and findings." *Id*. at pp. 16 & 18. The ALJ also considered the paucity of opinion evidence contained in the record and explained why little weight was attributed to those opinions. Specifically, the ALJ gave little weight to the prescription issued by Anita Vigorito, M.D., Baylis's treating physician, dated November 8, 2011, indicating that Baylis should be out of work until further evaluation. *Id*. at p. 18 & 411. The ALJ stated that such opinion was "not specific and . . . is only a very recent assessment responding to a new complaint and because the claimant had not yet had treatment." *Id*. at p. 18. And little weight was also given to Dr. Vigorito's letter, dated August 26, 2011, asking that Plaintiff be excused from jury duty due to chronic

knee and ankle pain and an inability to sit comfortably for long periods of time. *Id*. The ALJ stated that such opinion is not supported by the medical evidence of record. *Id*.

Pointedly absent from this portion of the ALJ's decision is any discussion of how Plaintiff's obesity, newly diagnosed spinal stenosis, and her borderline intellectual functioning could affect her RFC. While it seems that the ALJ considered at least two of these conditions in his severity analysis at Step Two, there is no mention of these conditions in the portion of the opinion whereby he considered the effects such conditions may have on Plaintiff's ability to perform work. Indeed, it appears to this Court that there is a significant gap in the development of the record in terms of the newer stenosis diagnosis, which was raised by Plaintiff during the Hearing, and the opinion evidence. In fact, there are no opinions from Plaintiff's treating physicians as to Plaintiff's functional capacity, and it is not entirely clear whether such opinions were solicited by the ALJ.

This gap is particularly troubling where, as here, Plaintiff represented herself *pro se*. In light of the remedial intent of the Social Security statute, and the non-adversarial nature of benefits proceedings, an ALJ has an affirmative duty to develop the medical record if it is incomplete. *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999); 20 C.F.R. §§ 404.1512(d) & 416.912(d). This affirmative duty is heightened in cases involving *pro se* claimants as the "ALJ has a duty to adequately protect a *pro* se claimant's rights 'by ensuring that all of the relevant facts [are] sufficiently developed and considered.'" *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990) (quoting *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980)). In this regard, the ALJ must make "every reasonable effort to help [the claimant] get medical reports from [his or her] own medical sources." *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996) (quoting 20 C.F.R. § 404.1512(d)); *see also Sanchez v. Barnhart*, 329 F. Supp. 2d 445, 450-51 (S.D.N.Y. 2004). "Accordingly, an ALJ may not rely, as factfinders in adversarial proceedings

customarily do, on the *absence* of probative evidence supporting the opinions of a claimant's expert, without making an affirmative effort to fill any gaps in the record before him." *Sanchez v. Barnhart*, 329 F. Supp. 2d at 450 (emphasis in original) (internal quotation marks and citations omitted). In furtherance of the duty to develop the record, an ALJ may re-contact medical sources if the evidence received from the treating physician or other medical sources is inadequate to determine disability and additional information is needed to reach a determination. 20 C.F.R. at § 404.1512(e).

The "opinion" evidence assessed by the ALJ was nothing of the kind and could not possibly have provided the ALJ with an adequate basis to form an RFC assessment. A note excusing Plaintiff from work and jury duty can hardly be categorized as a statement as to the limitations Plaintiff endures by reason of her medical conditions. Given Plaintiff's *pro se* status and her compounding ailments, the ALJ should have re-contacted her treating physicians in order to procure an assessment of how her many medical conditions may affect her ability to perform certain exertional and nonexertional tasks.

The Court is also troubled by the ALJ's failure to address Plaintiff's borderline intellectual functioning and whether it plays a role in eroding the sedentary occupational base. Yet, information obtained after the ALJ's decision seems to shed light on this inquiry as it pertains to the period at issue. In assessing the severity of her medical conditions, the ALJ discussed the psychoeducational evaluation performed by Brett T. Hartman, Psy.D., on November 10, 2011. Tr. at p. 13. Ultimately, Dr. Hartman found that based on the testing performed, Plaintiff functioned in the "borderline range of intelligence overall, with a moderate degree of scatter across her overall functioning." *Id*. at p. 433. Dr. Hartman stated that Baylis "clearly qualifies for learning disorder status and should be provided with special accommodations if she returns to a vocational program" and that with such accommodations, she "would have an adequate opportunity to succeed at a vocational program or community college." *Id*.

at p. 444. In documentation provided to the SSA after the ALJ issued a decision, we learn that Plaintiff had been involved with the New York State Adult Career & Continuing Ed Services Vocational Rehabilitation ("ACCES-VR") since March 2011 and began taking classes in September 2011. *Id*. at p. 492-97. While the actual exhibit is dated long after the ALJ issued his decision, the time period discussed therein concerns the time period at issue. Specifically, by Letter, dated August 24, 2012, a counselor from ACCES-VR documented Baylis's efforts to receive vocational training and the problems she incurred due to her learning and physical disabilities. *Id*. at p. 494-97. Pointedly, despite the fact that Baylis had received special accommodations with her classes, she struggled to keep up with the workload. As of May 6, 2012, Plaintiff was deemed exempt from participating in temporary assistance work activities due to her medical conditions. *Id*. at p. 495. This evidence directly contradicts the assessment rendered by Dr. Hartman regarding Plaintiff's ability to obtain vocational training and should be explored further. The fact that the ALJ limited Plaintiff to unskilled sedentary work does not ameliorate his failure to fully develop the record.

42 U.S.C. § 405(g) provides in pertinent part that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is *new* evidence which is *material* and that there is *good cause* for the failure to incorporate such evidence into the record in a prior proceeding . . . ." (emphasis added); *see also Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991); *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1998). In accordance with this provision, the Second Circuit requires the Plaintiff to show that the proffered evidence is "(1) new and not merely cumulative of what is already in the record . . . (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative . . . [and] (3) good cause [exists] for [claimant's] failure to present the

evidence earlier." *Lisa v. Sec'y of Dep't of Health and Human Servs.*, 940 F.2d at 43 (internal quotation marks and citations omitted). Furthermore, the Regulations provide that when "new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970.

The Court finds that this new evidence submitted after the ALJ's decision is both material and relevant to the period at issue. In light of this new evidence, the matter should be remanded for further development of the record. First, the Plaintiff's treating physicians should be re-contacted in order to provide medical assessments of Plaintiff's ability to do work related functions. Next, the SSA should assess the effects Plaintiff's obesity, spinal stenosis, and learning disabilities (along with other medical conditions supported by the record) have, if any, on her ability to perform the full range of sedentary, unskilled work.[7] After receiving further evidence, the Plaintiff should be entitled to another ALJ Hearing, this time represented by counsel, presuming her present counsel will agree to represent her at the SSA.

## 2. *VE Hypothetical and Step Five*

Although the Court has already determined that the ALJ erred in determining Plaintiff's RFC, it is important to further note that the Commissioner did <u>not</u> carry her burden at Step Five.

At Step Five of the sequential disability evaluation, the Commissioner bears the burden of proving that despite the claimant's severe impairments he or she is capable of performing work that is available in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v) & 416.920(a)(4)(v). Ordinarily, if a claimant suffers solely from exertional impairments, the Commissioner meets her burden at the fifth

---

[7] Because the Court finds that further development of the record is necessary, we do not address Plaintiff's complaints regarding her credibility assessments.

step by resorting to the Grids. *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999); *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); 20 C.F.R. § 404.1569. The Grids place claimants with severe exertional impairments who can no longer perform past relevant work into categories according to their RFC, age, education, and work experience (*i.e.*, skilled or unskilled as well as transferability of skills). 20 C.F.R. Pt. 404, Subpt. P, App. 2; *see also Clark v. Barnhart*, 2003 WL 221397777, at *4-5 (E.D.N.Y. Sept. 16, 2003). Based on these factors, the Grids are dispositive on whether the claimant is disabled or not disabled and proper application thereto will obviate the need for any vocational testing. *Rosa v. Callahan*, 163 F.3d at 82 ("For a claimant whose characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he is disabled."). Exclusive use of the Grids, however, is "inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations," i.e., a combination of exertional and non-exertional limitations. 20 C.F.R. § 404.1569a(d). "[W]hen significant nonexertional impairments are present or when exertional impairments do not fit squarely within grid categories, the testimony of a vocational expert is required to support a finding of residual functional capacity for substantial gainful activity." *Horbock v. Barnhart*, 210 F. Supp. 2d 125, 127 (D. Conn. 2002) (citing *Bapp v. Bowen,* 802 F.2d at 605). "[T]he mere existence of a nonexertional impairment does not automatically require the production of a vocational expert nor preclude reliance on the guidelines." *Bapp v. Bowen*, 802 F.2d at 603. Rather, only when a claimant's nonexertional limitations "significantly limit the range of work permitted by his exertional limitations" such significant diminishment renders sole reliance on the grids is inappropriate. *Id*. at 605-06. "A claimant's work capacity is 'significantly diminished' if there is an 'additional loss of work capacity beyond a negligible one or, in other words, one that so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id*. at 606 (quoted in *Pratts v. Chater*, 94

F.3d 34, 39 (2d Cir. 1996)).[8]

Exertional limitations are strength limitations, which include the ability to sit, stand, walk, carry, push, and pull. 20 C.F.R. §§ 404.1569a(a)–(b) & 416.969a(a)–(b); *see also Zorilla v. Chater*, 915 F. Supp. 662, 667 n.3 (S.D.N.Y. 1996). Non-exertional limitations imposed by impairments affect one's ability to meet requirements of jobs, other than strength demands including, "difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching." 20 C.F.R. §§ 404.1569a(c)(1)(vi) & 416.969a(c)(1)(vi); *see also Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y.1997).

If a claimant is unable to perform a full range of a particular exertional category of work, or an issue of whether the claimant possesses transferable work skills remains, the ALJ may utilize the services of a VE. 20 C.F.R. §§ 404.1566(e) & 416.966(e). "A vocational expert may provide testimony regarding the existence of jobs in the national economy and whether a particular claimant may be able to perform any of those jobs given his or her functional limitations." *Charlebois v. Comm'r, Soc. Sec. Admin.*, 2003 WL 22161591, at *10 (N.D.N.Y. Sept. 12, 2003) (citing, *inter alia*, *Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983)). In order for the VE's opinion to be considered substantial evidence, the ALJ "must elicit the VE's testimony by asking hypothetical questions addressing the claimant's particular limitations and capabilities." *Valoshin v. Sec'y of Health and Human Servs.*, 1986 WL 14624, at *5 (E.D.N.Y. Oct. 31, 1986) (citing *Aubeuf v. Schweiker,* 649 F.2d 107, 114 (2d Cir. 1981)). A VE's testimony should be given credit and due weight when "there

---

[8] The Second Circuit arrived at this standard in reliance on sister circuit case law as well as the report accompanying the promulgation of the grids. *See Bapp v. Bowen*, 802 F.2d at 605-06. The promulgation report made clear that nonexertional limitations may have the effect of excluding certain jobs within a particular category, however, in some cases, such exclusions are negligible in that a wide range of jobs exist within the functional level especially in light of the fact that an individual "need not be able to perform each and every job in a given range of work." *Id.* at 606 (quoting 43 FED. REG. 55,349-55,361).

is substantial record evidence to support the assumption [underlying the hypothetical] upon which the vocational expert based his opinion." *Renna v. Barnhart*, 2003 WL 21005281, at *3 (E.D.N.Y. May 2, 2003) (citing *Dumas v. Schweiker,* 712 F.2d at 1554). "The vocational expert's testimony is only useful if it addresses whether the particular claimant, with his limitations and capabilities, can realistically perform a particular job." *Aubeuf v. Schweiker,* 649 F.2d at 114. This Court reviews the hypothetical question solely to determine whether there is "substantial record evidence to support the assumption upon which the vocational expert based his opinion." *Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d Cir. 1983); *see also Miller*, 2003 WL 749374, at * 8.

As already noted above, Plaintiff appeared at the Hearing *pro se* and waived her right to representation. Tr. at pp. 28-30. During the ALJ's examination of the VE, the following hypothetical question was presented:

> I would like you to assume that person to whom I'm referring is between the ages of 40 and 46 inclusive, and has the same education and past work as the claimant has. I'd like you to assume the person could occasionally lift, carry, push, and pull at least 10 pounds. The person could frequently lift, carry, push, and pull less than 10 pounds. The person could stand and walk at least two hours in a work day with normal breaks, with standing limited to about 15 minutes at a time. Walking limited to short distances of a block or so, several times a day. The person could sit six hours in a work day with normal breaks, her sitting limited to about one hour. Afterwards, the person would need to stand or walk a few minutes before resuming sitting. The person . . . . could occasionally climb stairs and ramps. The person could never climb ladders, ropes, and scaffolds. The person could occasionally kneel, crawl, and crouch. And the person should avoid exposure to workplace hazards such as heights and dangerous machinery.

*Id*. at pp. 64-65.

The ALJ inquired whether a person with those limitations could perform any of the past work noted in Plaintiff's work history, to which the VE replied "no". *Id*. at p. 65. The ALJ then inquired whether a person with those limitations could perform any other work, to which the VE announced three positions: 1) food checker, a sedentary, semi-skilled job; 2) taxi dispatcher, a sedentary, semi-skilled

job; and 3) answering service operator, a sedentary, semi-skilled job. *Id.* at pp. 66-67.

Next, the ALJ asked the VE to assume the same set of facts, but added in the extra restriction that the person could only occasionally reach overhead with the non-dominant upper extremity and asked whether that additional fact would affect the occupations identified, to which the VE again responded "no". *Id.* at p. 68. The ALJ then asked Plaintiff if she had any comments or questions for the VE, to which she responded "no". *Id.*

Despite the hypothetical given the to VE, in his written decision, the ALJ determined that Baylis had the

> residual functional capacity to perform sedentary work as defined in 20 C.F.R. § 404.1567(a) and 416.967(a) **except limited to simple, unskilled work**, occasionally lift, carry, push, and pull 10 pounds; frequently lift, carry, push, and pull less than 10 pounds; stand/walk at least two hours in a work day with normal breaks; and occasionally reach with the nondominant upper extremity.

*Id.* at p. 16 (emphasis added).

No where in the RFC does the ALJ include the limitation presented to the VE that the hypothetical claimant would be limited to standing fifteen minutes at a time with "[w]alking limited to short distances of a block or so, several times a day." *Compare id.* at p. 16 *with id.* at p. 65. Nor is there any mention in the RFC that Plaintiff would be limited to sitting for "about one hour" at which point she would need to "stand or walk a few minutes before resuming sitting." *Id.* The limitations presented to the VE regarding climbing, kneeling, crawling, and crouching are also inexplicably missing from the RFC assessment. *Id.* But the most problematic error committed by the ALJ is not so much what he presented to the VE but left out of the RFC – it is what he failed to present to the VE yet included in the RFC, namely, the finding that Plaintiff's ability to do sedentary work is limited to "unskilled" work. *Id.* at p. 16.

According to the Regulations,

> [u]nskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. . . . and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.

20 C.F.R. §§ 404.1568(a) & 416.968(a).

The ALJ did not present this limitation to the VE, and the Court notes that each of the occupations identified by the VE were semi-skilled, which, according to the Regulations,

> is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, **but more complex than unskilled work**. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

*Id*. at §§ 404.1568(b) & 416.968(b) (emphasis added).

Despite this discord, the ALJ seemingly relied upon the VE's opinion in rendering a finding a Step Five and ultimately determining that Plaintiff had the ability to perform work available in the economy.

The Court is confounded with the ALJ's determination at Step Five as it appears to be internally inconsistent. In determining at Step Five whether Plaintiff could perform other jobs available in the national economy, the ALJ invokes language that implies he is relying on the Medical Vocational Rules ("the Grids") to support a finding of "not disabled.' Tr. at p. 19. However, the ALJ then states that "[b]ased on the testimony of the vocational expert, the undersigned concludes that, considering the claimant's age, education, work experience, and residual functional capacity, a finding of "disabled" is appropriate under the framework of the above-cited rule." *Id*. In light of the procedural posture of this case, the Court presumes the ALJ meant that a finding of "not disabled" is appropriate. Nevertheless, it appears that the ALJ is relying upon a flawed VE opinion, and therefore remand is mandated.

The Court does not agree with the Commissioner's stance that the ALJ's invocation of the VE testimony was simply superfluous or that such invocation was unnecessary and constitutes harmless error. *See* Def.'s Br. at pp. 12-13. The Commissioner argues that the ALJ's RFC is supported by substantial evidence in the record and because there is not a significant erosion of the occupational base, reliance on the Grids was appropriate. In support, the Commissioner points the Court to the Regulations wherein administrative notice has been taken by the SSA that there are "approximately 200 separate sedentary unskilled occupations [that] can be identified in eight broad occupational categories, each occupation representing numerous jobs in the national economy. These jobs can be performed after a short demonstration or within 30 days, and do not require special skills or experience." Def.'s Br. at pp. 11-12 (quoting 20 C.F.R. Part 404, Subpart P, App. 2, § 201.00(a). But this administrative notice may not be applicable in this case were the occupational base found to have been eroded. According to Social Security Ruling 96-9p, there are many instances where certain RFC limitations could further erode the sedentary occupational base. *See* Social Security Ruling (SSR) 96-9p, *Policy Interpretation Ruling: Titles II and XVI: Determining Capability to do Other Work – Implications of a Residual Functional Capacity For Less Than a Full Range of Sedentary Work,* 1996 WL 374185 (S.S.A. 1996). And it is unclear whether any of Plaintiff's limitations could impact the occupational base.

Upon remand, and after further development of the record, the Commissioner should provide Plaintiff with another Hearing where a proper hypothetical can be presented to a VE.

### III. CONCLUSION

As noted above, due to the errors committed by the ALJ, there needs to be a further development of the record. The Court directs that upon remand, Plaintiff's physicians be re-contacted

so that a functional assessment based upon all of Plaintiff's medical conditions can be provided. Next, the SSA should assess the effects Plaintiff's obesity, spinal stenosis, and learning disabilities (along with other medical conditions supported by the record) have, if any, on her ability to perform the full range of sedentary, unskilled work. After receiving further evidence, the Plaintiff should be entitled to another ALJ Hearing, this time represented by counsel, presuming her present counsel will agree to represent her at the SSA. During the hearing, the ALJ should solicit testimony from another vocational expert and provide proper hypotheticals to such expert.

**WHEREFORE**, based upon consideration of the above, it is hereby

**ORDERED**, that the Commissioner's decision denying disability benefits is **REVERSED** and this matter is **REMANDED** to the Social Security Administration, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further development of the record; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order upon the parties to this action.

Date:  September 24, 2015
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge